**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| SEAN SHARKEY, individually and on behalf of all others similarly situated, | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. No. 17-cv-1012 |
| ARI NETWORK SERVICES, INC.,  CHAD J. COOPER, WILLIAM H. LUDEN,  WILLIAM C. MORTIMORE,  ROBERT Y. NEWELL, ROY W. OLIVIER, P. LEE POSEIDON, | ) ) ) JURY TRIAL DEMANDED ) ) ) |
| Defendants. | ) ) ) |

**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**

Plaintiff Sean Sharkey ("Plaintiff"), by his attorneys, alleges upon information and belief,

except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      Plaintiff brings this class action on behalf of the public stockholders of ARI

Network Services, Inc. ("ARI" or the "Company") against the members of ARI's Board of

Directors (collectively, the "Board" or the "Individual Defendants," as further defined below,

and together with the Company "Defendants") for violations of Sections 14(a) and 20(a) of the

Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and

U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17

C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to affiliates of True Wind

Capital Management, LLC ("True Wind").

2.      On June 21, 2017, ARI issued a press release announcing that they had entered

into an Agreement and Plan of Merger dated June 20, 2017 (the "Merger Agreement"), pursuant

to which True Wind's affiliates, True Wind Capital, L.P. ("TW") and Expedition Holdings LLC ("Parent"), through Parent's wholly-owned subsidiary, Expedition Merger Sub, Inc. ("Merger Sub," and collectively with True Wind, TW, and Parent "TWC") would acquire all of the outstanding shares of ARI in an all-cash transaction (the "Proposed Transaction"). If consummated, ARI stockholders will receive $7.10 in cash for each share of ARI common stock that they own ("Merger Consideration"). The Proposed Transaction has an enterprise value of approximately $140 million.

3.  On July 17, 2017, Defendants issued materially incomplete and misleading disclosures in the Form PREM14A Preliminary Proxy Statement (the "Proxy") filed with the SEC in connection with the Proposed Transaction.

4.  The Proxy is deficient and misleading because, *inter alia*, it fails to disclose material information about the facts and circumstances that led up to the Proposed Transaction. Without all material information, ARI stockholders cannot make a properly informed decision regarding whether to vote in favor of the Proposed Transaction.

5.  The Proxy is also deficient and misleading because it fails to provide adequate disclosures of all material information relating to whether the confidentiality agreements ARI entered into contained standstill provisions which may be operating to restrain competing bids, and fails to provide information pertaining to TWC's communications with anyone at ARI concerning the possible continued employment of ARI's executive officers and director following the Proposed Transaction, including but not limited to the timing, content, nature, parties, and form of such communications.

6.  Without additional information the Proxy is materially misleading and in violation of federal securities laws.

2

7.     By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading.

8.     The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 thereunder, as stockholders need such information in order to make a fully-informed decision in determining how to vote on the Proposed Transaction.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to ARI's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of federal securities laws and regulations.   Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

10.    The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (a) ARI is incorporated and headquartered in this District; (b) the conduct at issue took place and had an effect in this District; (c) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (d) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

12.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of ARI.

13.     ARI is a corporation organized and existing under the laws of the State of Wisconsin.  It maintains principle executive offices at 10850 West Park Place, Suite 1200, Milwaukee, WI 53224.  ARI's common stock trades on NASDAQ under the ticker symbol "ARIS."

14.     Defendant Chad J. Cooper ("Cooper") has served as a director of the Company since October 2014.

15.     Defendant William H. Luden ("Luden") has served as Chairman of the Board since March 2014 and as a director of the Company since March 2012.

16.     Defendant William C. Mortimore ("Mortimore") has served as a director of the Company since 2004.

17.     Defendant Robert Y. Newell ("Newell") has served as a director of the Company since November 2012.

18.     Defendant Roy W. Olivier ("Olivier") has served as Chief Executive Officer ("CEO"), President and a director of the Company since May 2008.

4

19.     Defendant P. Lee Poseidon ("Poseidon") has served as a director of the Company since June 2008.

20.     Defendants Cooper, Luden, Mortimore, Newell, Olivier, and Poseidon are collectively referred to as "Individual Defendants" and/or the "Board."

21.     Relevant non-party Merger Sub is a corporation organized and existing under the laws of the State of Wisconsin.

22.     Relevant non-party Parent is a corporation organized and existing under the laws of the state of Delaware.

23.     Relevant non-party TW, an affiliate of True Wind, has provided equity commitments for and is serving as a guarantor of Parent and Merger Sub.

24.     Relevant non-party True Wind is a private equity firm based out of San Francisco focusing on investing in technology companies.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action individually and as a class action on behalf of all holders of ARI common stock who are being, and will be, harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

26.     The action is properly maintainable as a class action under the Federal Rule of Civil Procedure 23.

27.     The Class is so numerous that joinder of all members is impracticable.  According to the Form 10-Q filed by the Company on June 14, 2017, as of June 8, 2017, ARI had 17,423,219 shares of common stock outstanding.  While the exact number of Class members is

5

presently unknown to Plaintiff and can only be ascertained through discovery, the Plaintiff believes that there are thousands of members in this Class. All members of the Class may be identified from records maintained by ARI or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following: (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if such securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class is entitled to injunctive relief as a result of Defendants' wrongful conduct.

29.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

30.     Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

31.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

32.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

6

33.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

34.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *Company Background*

35.     ARI is a provider of tools and marketing services designed to assist merchants and distributors with increasing productivity and sales.  The company works with over 23,500 equipment dealers and 3,360 brands worldwide.

36.     True Wind is a private equity firm managing $560 million located in San Francisco.  True Wind focuses on investing in technology companies.

### *The Sale Process*

37.     In January 2015, Defendant Olivier and William A. Nurthen ("Nurthen"), the Company's Chief Financial Officer ("CFO"), gave a presentation to Financial Party B, a private equity firm which was interested in a potential strategic transaction with ARI.

38.     On January 20, 2016, the Company and Financial Party B entered into a confidentiality agreement containing standstill provisions.

39.     On June 9, 2016, the Board met and considered retaining a financial advisor to begin a formal search for strategic alternatives.  During this same meeting, the Board determined to request a formal indication of interest ("IOI") from Financial Party B.

7

40.     On July 7, 2016, Financial Party B sent ARI a non-binding indication of interest with a potential acquisition price of $6.49 per share.

41.     On October 11, 2016, the Board decided to formally explore strategic alternatives and obtain a financial advisor due to the continued interest from Financial Party B and increased attention ARI had been receiving from current and potential investors.

42.     On November 11, 2016, the Board selected Pacific Crest Securities ("PCS"), a division of KeyBanc Capital Markets Inc., as its financial advisor.  The Company subsequently entered into an engagement letter with PCS on December 5, 2016.

43.     Beginning on February 16, 2017, at the direction of the Board, ARI and PCS began reaching out to potential strategic partners and potential financial partners.  As a byproduct of these efforts, the Company entered into five non-disclosure agreements with potential strategic partners.  In addition, the Company entered into 31 non-disclosure agreements with potential financial partners which contained standstill provisions.

44.     On March 3, 2017, ARI was contacted, on an unsolicited basis, by an investment bank representing Project Apple Party, who expressed interest in acquiring certain assets of ARI, but not the entire company.

45.     On March 8, 2017, PCS informed the Board that it requested that potential purchasers submit IOIs by March 22, 2017.

46.     By March 24, 2017, ARI received seven IOIs from financial sponsors, including TWC.

47.     On March 27, 2017, at a telephonic meeting of the Board, PCS discussed in detail each of the IOIs received.  After reviewing the IOIs received, the Board determined to move to

8

the next round in the process, which would include Financial Party A, Financial Party B, Financial Party C, Financial Party E, Financial Party H, and TWC.

48.     From April 11, 2017 through April 27, 2017, Company representatives met with five potential financial buyers that submitted IOIs, Financial Party A, Financial Party B, Financial Party C, Financial Party E, and TWC to discuss the potential for a transaction.

49.     On April 18, 2017, at a telephonic Board meeting, Defendant Olivier discussed and reviewed the IOIs received and noted that "perhaps four of the six parties appeared to remain as viable potential bidders. . . ."  At this meeting, Defendant Olivier requested that the Board consider subsequent steps necessary to continue the process.  Prompted by additional inquiries from Defendant Olivier regarding the status of the process, the Board discussed valuations of ARI.  Upon further input from Defendant Olivier, the Board decided to continue with the process by preparing an auction draft of a merger agreement.

50.     On May 9, 2017, Defendant Olivier, Nurthen and representatives of TWC had a dinner meeting during which they discussed the potential of a transaction.

51.     On May 10, 2017, Defendant Olivier and Nurthen had a call with Project Apple Party to discuss its continued interest and Project Apple Party verbally indicated a purchase price range for acquiring certain asserts of ARI.  On May 11, 2017, Defendant Olivier sent an email to the Board which described the purchase price range indicated by Project Apple Party.

52.     On May 10, 2017, the Company also entered into confidentiality agreements with Financial Party F and Financial Party G because they had acquired Company A, which ARI and PCS believed could have had synergies with ARI.

9

53.     On May 15, 2017, the Board and Company management discussed Project Apple Party's interest and the Board authorized ARI to sign a non-binding term sheet which included an exclusivity provision with the Project Apple Party.

54.     From May 17, 2017 through May 24, 2017 Financial Party A and Financial Party B were informed that they should only submit a bid letter if such offers would be higher than those contained in the firms, respective, previously submitted IOIs.

55.     On May 19, 2017 Defendant Olivier received a non-binding term sheet from Project Apple Party.

56.     On May 24, 2017, ARI received a formal bid letter from TWC with an offer price of $7.10 cash per share.  Financial Party A and Financial Party B relayed their continued interest but communicated an inability to raise their bid prices.

57.     On May 24, 2017, PCS also informed the Board that they did not expect Financial Party H to submit a bid, due to their interest in the Company being contingent upon another transaction occurring which PCS did not expect to materialize.

58.     On May 26, 2017, during a telephonic meeting, the Board discussed that while Financial Party F and Financial Party G had entered into non-disclosure agreements with the Company, they had not submitted an indication of interest or responded in any substantial manner.  During this meeting, the Board reviewed and discussed a detailed summary, prepared by PCS, of TWC's bid.

59.     On May 30, 2017, Nurthen presented various analyses to the Board, including a stand-alone valuation of the company, a valuation based on a potential transaction with Project Apple Party, and a valuation based on a TWC's bid.  The Board then requested Defendant Olivier's and Nurthen's views on the TWC bid, and each of them expressed their belief that the

TWC offer represented the best value for ARI stockholders. After consideration of these three options, the Board determined that the TWC bid represented the best value for ARI stockholders and decided to execute an exclusivity agreement with TWC, pending resolution of concerns raised by TWC relating to whether management would roll over its equity into the post-merger company. With this issue in mind, management was authorized by the Board to discuss the management rollover issue with TWC.

60.     On June 1, 2017, TWC had a call with Defendant Olivier during which they discussed the status of the process and TWC's expectations relating to potential management equity rollovers.

61.     On June 9, 2017, ARI executed an exclusivity agreement with TWC for a period of seven business days.

62.     From June 10, 2017 through June 19, 2017, the Board held various meetings during which they discussed the ongoing negotiation process with TWC.

63.     On June 20, 2017, PCS provided the Board its opinion that, from a financial point of view, the Merger Agreement was fair to ARI stockholders. Following additional discussions relating to the TWC offer, the Board unanimously approved the transaction and ARI and TWC executed the Merger Agreement.

64.     On June 21, 2017, ARI issued a press release announcing the agreement, reading in relevant part:

> Milwaukee, Wis., June 21, 2017 – ARI Network Services, Inc. (NASDAQ: ARIS), an award-winning provider of SaaS, software tools and marketing services that help dealers, distributors and manufacturers Sell More Stuff!™, has entered into a definitive agreement to be acquired by an affiliate of True Wind Capital Management, LLC, a San Francisco-based private equity firm focused on investing in leading technology companies.

Under the terms of the agreement, ARI shareholders will receive $7.10 in cash for each share of ARI common stock they own. The purchase price represents a premium of approximately 33% to ARI's average closing price for the period of 60 trading days ending June 20, 2017. The all-cash transaction represents an enterprise value of approximately $140 million and has been unanimously approved by ARI's Board of Directors.

"We are very excited to partner with the True Wind team. This transaction is the result of an extensive process, and we believe it represents a great outcome for our shareholders," said Roy W. Olivier, ARI president and CEO. "The investment by True Wind positions ARI to accelerate our pace of innovation and better positions ARI to capitalize on future growth opportunities."

"ARI is a market leader with an experienced management team. The Company's mission-critical software, data and digital marketing solutions provide customers best-in-class technology to run their businesses," said Adam Clammer, Founding Partner at True Wind Capital. "True Wind is excited to partner with ARI and its management team to continue to deliver innovative solutions and achieve growth potential."

Closing of the deal is subject to customary closing conditions including the approval of ARI shareholders. The transaction is expected to close in the third calendar quarter of 2017.

Pacific Crest Securities and Houlihan Lokey are serving as financial advisors to ARI, and Godfrey & Kahn S.C. is serving as legal advisor to ARI. True Wind's legal advisor is Kirkland & Ellis LLP.

### The Proxy Misleads ARI Stockholders by Omitting Material Information

65.    On July 17, 2017, ARI filed a materially misleading Proxy with the SEC which was designed to convince stockholders to vote in favor of the Proposed Transaction. The Proxy is rendered misleading by the omission of critical information concerning the process that led up to the execution of the Merger Agreement, including the solicitation and offer review process, PCS's financial analysis conducted in reaching its fairness opinion, and information regarding potential conflicts of interest faced by ARI senior management when leading the search for strategic alternatives that ultimately resulted in the execution of the Merger Agreement. As such, the Proxy, which recommends that the Company's stockholders vote their shares in favor of the

Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

### *Misleading Statements and Omissions Regarding the Sale Process*

66.     The Proxy contains material misstatements and omissions regarding the solicitation and negotiation process taking place in the lead up to the Merger Agreement.  For example, the Proxy indicates that by March 24, 2017, the Company had received seven indications of interest from financial sponsors, including TWC; however, the actual terms of such IOIs are noticeably absent from the Proxy.  The absence of the terms of these recent IOIs is particularly apparent as the Proxy seemingly selectively discloses the terms of an IOI the Company received nearly a year earlier, on July 7, 2016, for $6.49 per share (a price substantially lower than the $7.10 offered by the Proposed Transaction).  Furthermore, Financial Party B continued onto the process and seemingly submitted an updated IOI in March of 2017, yet if such event occurred, the updated offer price is also noticeably absent from the Proxy.

67.     Similarly, the Proxy fails to disclose the terms of offers received from Project Apple Party.  Such information is particularly relevant as the Company received a term sheet from Project Apple Party just one month prior to the execution of the Merger Agreement.  Moreover, this potential transaction clearly received substantial consideration from the Board as they received presentations from Company management on three possible scenarios in the weeks leading up to the Merger Agreement, one of which included the potential consummation of a transaction with Project Apple Party.

68.     The Proxy also fails to disclose how the Board, and thus the Company, responded to the seven IOIs that were received by March 24, 2017.  While the Proxy expressly indicates that seven IOIs were received, the next substantive discussion of such IOIs merely states that

Defendant Olivier reviewed and discussed with the Board that "perhaps four of the six parties appeared to remain viable potential bidders. . . ." While the seventh IOI may have been the updated and new IOI that was likely submitted by Financial Party B, such statement is at best misleading as to whether the Board evaluated and responded to all IOIs submitted in March 2017.

69.     The Proxy is also materially misleading with respect to the solicitation and negotiation process as relates to Financial Party C. For example, the Proxy states that from April 11, 2017 through April 27, 2017, "two other potential financial buyers . . . submitted IOIs, Financial Party C and Financial Party E" on page 31. However, on page 34, the Proxy explicitly contradicts this statement by stating, "Financial Party C did not submit an IOI." Similarly, the Proxy states that representatives of the Company met with Financial Party E during this same time period, yet fails to follow up on any subsequent conversations with Party E regarding a potential transaction.

70.     This information is particularly material, as stockholders would be unable to determine whether there were and may still be other potential strategic or financial partners that would be willing to provide greater consideration than that offered by the Proposed Transaction.

### Standstill Provisions

71.     The Proxy discloses that ARI entered into several non-disclosure agreements with potential acquirers during its search for strategic partners or financial partners. For example, the Proxy expressly states that the Company entered into five non-disclosure agreements with potential strategic partners without disclosing whether such agreements contained standstill provisions. In addition, the Proxy indicates that the Company entered into "non-disclosure agreements with a total of 31 potential financial partners (each of which contained standstill

provisions). . . ."

72.     However, the Proxy is silent as to whether the non-disclosure agreements with the potential strategic partners contained any standstill agreements, let alone the terms of such provisions.  Further, the Proxy is silent as to whether the standstill provisions in the non-disclosure agreements the Company entered into with potential financial partners are currently operating to restrain the counterparties from making a superior offer or topping bid for the Company, or if they contained don't-ask-don't-waive provisions or other terms that contractually prohibit the counterparties from seeking a waiver of any standstill provision terms.  Without this information, the Company's stockholders are being misled to believe that all of these counterparties are currently free to make a superior offer to acquire the Company.

*Potential Conflicts Facing Company Management and Directors*

73.     The Proxy contains material misrepresentations and omissions regarding employment negotiations taking place in the lead up to the Merger Agreement.

74.     The Proxy states that "As of the date of this proxy statement, ARI's management has not reached any agreement, arrangement or understanding with TWC regarding the employment of ARI's management team following a transaction."  However, the Proxy also states that, "[c]ertain of our executive officers have had and may continue to have discussions, or may enter into agreements with, Parent or Merger Sub or their respective affiliates regarding employment with, or the right to purchase or participate in the equity of, the Surviving Corporation or one or more of its affiliates."  In addition, the Proxy states that when considering whether to recommend the Proposed Transaction, the Board considered the "continued employment of ARI's officers by the Surviving Corporation anticipated following the Effective time. . . ."

75.     The foregoing statements relating to the continued employment of ARI executives are at best misleading, as there is no information as to the content, nature, timing nor parties involved in discussions these Company executives "have had."  Moreover, given that TWC is a private equity buyer, rather than a strategic purchaser, the likelihood is very high that TWC pursued communications regarding its intention to retain management, as similarly situated buyers typically do in such transactions.

76.     Contrary to the disclosure in the Proxy, the continuing employment of ARI management after the close of the Proposed Transaction appears to be a foregone conclusion.  In the press release announcing the Proposed Transaction, Defendant Olivier, ARI's CEO, stated, "[w]e are very excited to partner with the True Wind Team."  Similarly, in the same press release, Adam Clammer ("Clammer"), founding partner of TWC, stated, "True Wind is excited to partner with ARI and its management team to deliver innovative solutions and achieve growth potential."

77.     Despite these explicit and clear public statements by Defendant Olivier and Clammer, the Proxy fails to disclose the timing, nature and content of any communications that took place between TWC and ARI concerning future roles for the Company's management.

78.     This information is particularly material with respect to Defendant Olivier, as he was instrumentally involved in the negotiations with TWC throughout the sale process.  Any communications – even one-sided written indications in proposals or other written communications – concerning post-merger employment between TWC or its affiliates and Defendant Olivier, or any other ARI officers, directors, or employees, during the sale process, would be material to a stockholder's decision as to whether to vote in favor of the Proposed Transaction.  Such communications give rise to substantial undisclosed conflicts of interests.

79.     Thus, the Proxy materially misleads ARI stockholders by omitting material facts concerning the timing and nature of communications between TWC and the Board or any ARI senior management regarding post-transaction retention of ARI's management and/or directors. ARI stockholders are currently led to believe that the sale process was free from such conflicts of interest, and that no pre-agreement negotiations regarding management retention affected the merger negotiations.

80.     Statements that "ARI's management has not reached any agreement, arrangement or understanding with TWC regarding the employment of ARI's management team" following the close of the Proposed Transaction are rendered materially misleading by the omission of material facts regarding the timing and nature of employment communications and negotiations that undoubtedly occurred.

81.     Hand-in-hand with the retention of ARI management, TWC and ARI management extensively negotiated the potential rollover of the equity held by ARI management into equity ownership of the post-merger company. In a description of a conference call between Defendant Olivier and Mr. Clammer of TWC on June 1, 2017, the Proxy discloses that the two discussed "the level and scope of potential management equity rollovers and the potential impact of such rollovers, if any, on the timing and execution of the proposed merger agreement." The next sentence clarifies that ARI management has not reached any agreement on employment, but omits any notice of an agreement regarding the rollover of equity.

82.     The discussion of potential rollover agreements continued throughout the process, including causing a change to the Merger Agreement discussed during the final meeting of the Board before approval of the Merger Agreement.

83.     Despite these extensive discussions, the Proxy omits any information regarding the current status of the rollover negotiations, or whether ARI management will receive entirely distinct and separate merger consideration than all other holders of ARI common stock. The Proxy materially misleads stockholders by stating, in the section headed "*Interests of ARI's Directors and Named Executive Officers in the Merger*," that each equity-based award held by ARI executives will be "converted into the right to receive an amount in cash."

84.     Thus, the Proxy materially misleads ARI stockholders by omitting material facts concerning the consideration to be received by ARI management.  ARI stockholders are currently led to believe that ARI management will receive cash compensation instead of the rollover equity contemplated by discussions throughout the sale process. This omission materially obfuscates and misleads stockholders as to the motivations of ARI management in the Proposed Transaction, and whether a conflict of interest exists between outside stockholders who will be cashed-out of the Company and ARI management whose equity holdings will continue to share in the success of the post-merger company.

### PCS's Financial Analysis

85.     The Proxy describes PCS's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of PCS's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, ARI's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on PCS's fairness opinion in determining whether or not to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to ARI's stockholders.

18

86. With respect to PCS's *Selected Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the companies observed by PCS in its analysis.

87. With respect to PCS's *Premiums Paid Analysis*, the Proxy fails to disclose the number of transactions analyzed, the corresponding premiums of such transactions, nor the high and low premiums observed by PCS in conducting this analysis.

88. With respect to PCS's *Illustrative Discounted Cash Flow Analysis*, the Proxy is materially misleading as to whether its free cash flow metric includes net investment and is the equivalent of unlevered free cash flow as presented in ARI's financial projections.

89. With respect to PCS's *Illustrative Leveraged Buyout Analysis*, the Proxy fails to disclose the inputs used and assumptions made in selecting the leverage multiple, exit multiple, and target internal rate of return used in their analysis.

90. Defendants' failure to provide ARI's stockholders with the foregoing material information renders the analyses depicted in the Proxy materially incomplete and misleading, and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information, and yet omitted at least recklessly or negligently. The material information described above that was omitted from the Proxy takes on actual significance in the minds of ARI's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to shareholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction, and are thus threatened with irreparable harm for which damages are not an adequate remedy.

91.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act, and SEC Rule 14a-9 Promulgated Thereunder, Against the Individual Defendants and ARI**

92.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

93.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act, and SEC Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  ARI is liable as the issuer of these statements.

94.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

95.     The omissions and misstatements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

96.     The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

97.     By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

98.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of § 20(a) of the Exchange Act
Against the Individual Defendants**

99.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

100.    The Individual Defendants acted as controlling persons of ARI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of ARI and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

101.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by the Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

102.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy contained the unanimous recommendation of

the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

103. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

104. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person who persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event that Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff and the Class rescissory damages;

D. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

F.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  July 21, 2017                                    Respectfully submitted,

                                                                **ADEMI & O'REILLY, LLP.**

                                                        By:     _/s/_ John D. Blythin
                                                                Guri Ademi (SBN 1021729)
                                                                Shpetim Ademi (SBN 1026973)
                                                                John D. Blythin (SBN 1046105)
                                                                Mark A. Eldridge (SBN 1089944)
                                                                3620 East Layton Avenue
                                                                Cudahy, WI 53110
                                                                (414) 482-8000
                                                                (414) 482-8001 (fax)
                                                                gademi@ademilaw.com
                                                                sademi@ademilaw.com
                                                                jblythin@ademilaw.com
                                                                meldridge@ademilaw.com

**OF COUNSEL:**                                               *Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567



30 Broad Street, 24th Floor
New York, NY 10004
T:212-363-7500
F:212-363-7171
www.zlk.com

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Sean J Sharkey, Jr., M.D , declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of ARI Network Services, Inc. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
| --- | --- | --- | --- |
| 7/11/16 | ARIS | 5000 | 4.84 |
| 3/19/15-3/18/15 | ARIS | 1333/50/1608/9 | 3.56/3.63/3/48/4.39 |
| 3/16/15 | ARIS | 1200 | 3.71 |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this July 20, 2017,at Lancaster, PA.

 Name: Sean J Sharkey, Jr., M.D

Signed: